FILED by __TM__ D.C.
ELECTRONIC

**Apr 14, 2015**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

## 15-80049-CR-MARRA/MATTHEWMAN

Case No. _____

18 U.S.C. § 1347
18 U.S.C. § 287
18 U.S.C. § 1035(a)(2)
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

**UNITED STATES OF AMERICA,**

**v.**

**SALOMON E. MELGEN,**

          **Defendant.**

_____/

## INDICTMENT

          The Grand Jury charges that:

## GENERAL ALLEGATIONS

          At all times material to this Indictment:

### Medicare Program

          1.          The Medicare program ("Medicare") is a federal health care program providing benefits to persons who are over the age of sixty-five or disabled.

          2.          Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

          3.          "Part B" of the Medicare program is a medical insurance plan that pays Medicare providers and suppliers, with the exception of inpatient healthcare facilities, directly for covered goods and services.

4.      "Part C" of the Medicare program allows Medicare beneficiaries to receive covered benefits through private health insurance companies, rather than directly through Medicare itself. These health care benefit programs follow the Medicare rules and regulations in determining coverage and payment for medical services rendered to beneficiaries.

5.      In addition to Medicare Part B and Part C health care plans, beneficiaries may also obtain "supplemental" plans from private health insurance companies, which cover the beneficiaries' co-pay obligations under Medicare. All of these plans follow Medicare rules and regulations as well.

6.      Medicare is administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare and Medicaid Services ("CMS"). CMS contracts with regional fiscal intermediaries, also known as Medicare administrative contractors ("MACs"), to receive, adjudicate, and pay Medicare claims submitted by Medicare providers. First Coast Service Options, Inc. ("First Coast") serves as the MAC in the State of Florida.

7.      Medical clinics or doctors who seek to be reimbursed for medical services provided to Medicare beneficiaries must first apply for and receive a Medicare "provider number." In signing a provider agreement, the provider agrees to abide by the Medicare laws, regulations, and program instructions. Among these obligations is the requirement that the provider submit claims only for reasonable and necessary medical services. In submitting a claim, the provider must set forth, among other things, the beneficiary's name and Medicare number, the services provided, the diagnosis justifying the services, the date the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider who ordered the services.

8.      To aid in the processing and adjudication of claims, Medicare providers are required to use standardized codes to describe the pertinent diagnoses and the procedures for which payment is being sought. With respect to diagnoses, providers are required to use the codes established in the International Classification of Diseases Manual ("ICD-9 Code"). ICD-9 Codes relevant to this Indictment, along with the corresponding abbreviations and internal office codes used by the defendant, include, but are not limited to, the following:

| ICD-9 Code | Diagnosis | Internal Office Code |
|:---:|---|:---:|
| 362.42 | Serous Detachment of Retinal Pigment Epithelium ("PEDs") | 135 |
| 362.51 | Nonexudative Senile Macular Degeneration of Retina ("Dry ARMD") | 137 |
| 362.52 | Exudative Senile Macular Degeneration of Retina ("Wet ARMD") | 138 |
| 362.81 | Retinal Hemorrhage ("Ret Hem") | 145 |
| 379.23 | Vitreous Hemorrhage ("Vit Hem") | 108 |
| 379.25 | Vitreous Membranes and Strands ("Vit Memb") | 111 |

9.      The Health Care Financing Administration Common Procedural Coding System ("HCPCS") is the coding system used by Medicare to identify every task, service, or procedure a medical practitioner may provide to a patient, including medical, surgical, and diagnostic services. The HCPCS is based upon the Physicians' Current Procedural Terminology code book ("CPT Code") developed by the American Medical Association. On their claims for payment, medical providers state the HCPCS/CPT Codes (hereinafter referred to as "CPT Codes") that identify the types of services for which Medicare is being charged. These codes are used to determine reimbursement. For any claim to be payable, the procedure performed must be reasonable and necessary for the particular diagnosis. In other words, the diagnosis, as reflected in the ICD-9 code, must support the medical necessity of the particular procedure performed.

3

CPT Codes, their descriptions, and their abbreviations relevant to this Indictment include, but are not limited to, the following:

| CPT Code | Description | Abbreviations per Medicare Billing System |
|---|---|---|
| 92014 | Comprehensive Ophthamological Exam and Evaluation for Established Patient | OPH MEDICAL XM&EVAL COMPRE EST PT 1+ VST |
| 92226 | Extended Ophthalmoscopy with Drawing, Interpretation and Report | OPSCPY EXTND RTA DRAWING I&R |
| 92235 | Fluorescein Angiography ("FA") with Interpretation and Report | FLUORESCEIN ANGRPH I&R |
| 92240 | Indocyanine Green Angiography ("ICG") with Interpretation and Report | INDOCYA9-GREEN ANGRPH I&R |
| 67220 | Destruction of Lesion of the Choroid, 1 or more sessions ("focal laser") | DSTRJ LES CHOROID PC 1+ SESS |
| 76510 | Ophthalmologic Ultrasound, B scan and Quantitative A scan ("A/B scan") | OPH US DX B-SCAN&QUAN A-SCAN SM PT ENCT |
| J2778 | Lucentis | RANIBIZUMAB INJECTION |
| 67028 | Injection of Drug into Eye | INTRAVITREAL NJX PHARMACOLOGIC AGT SPX |

10.     In addition to the basic CPT Codes, there are a number of "modifiers" that are two-digit or two-letter supplements that provide additional information about the procedure. For example, in ophthalmology, the provider must specify the eye upon which a procedure has been performed. For some procedures, the modifier "50" is used to indicate that the procedure was bilateral, i.e., performed on both eyes. For other procedures, the suffix RT or LT is used to indicate that the procedure was performed on the right eye or left eye, respectively.

11.     Under the laws that regulate the Medicare program, no payment may be made for any expenses incurred for items or services that are not reasonable and necessary for the diagnosis or treatment of illness or injury. In general, Medicare makes the physician the "gatekeeper" for determining when medical testing and treatment are medically reasonable and necessary. However, MACs such as First Coast are authorized to issue policy decisions regarding whether and under what circumstances certain services are payable by Medicare.

4

These decisions, known as local coverage determinations ("LCDs"), are readily available through the CMS and First Coast websites, as well as in hard copy upon written request. Medicare providers are also notified of changes or updates to LCDs through email and monthly Medicare publications. LCDs are made in accordance with the best practices of the pertinent medical specialty. To receive reimbursement, providers are obligated to follow all Medicare rules and regulations, including LCDs.

12.     Medicare permits claims to be submitted electronically. To do so, a provider must enroll in electronic billing through the MAC. By submitting an enrollment form, a provider agrees that all claims will be accurate, complete, and truthful. Further, the provider's unique identification number affixed to a claim constitutes a lawful electronic signature verifying that the services are medically reasonable and necessary and were performed as billed. In order to timely process the many millions of claims generated annually in the Medicare program, Medicare relies upon the honesty and integrity of providers who certify the validity of their claims.

**The Defendant**

13.     The defendant, **SALOMON E. MELGEN**, owned and operated Vitreo-Retinal Consultants of the Palm Beaches ("VRC"), doing business as "Vitreo Retinal Consultants Eye Center" and "The Melgen Retina Eye Center." VRC was a medical clinic that was incorporated in the State of Florida on or about December 12, 1990. VRC had four offices located in Palm Beach and St. Lucie Counties in the Southern District of Florida.

14.     The defendant was an ophthalmologist and retina specialist licensed to practice medicine in the State of Florida. As a retina specialist, the defendant treated conditions and

diseases of the retina, including macular degeneration. At all times material to this Indictment, the defendant was the only licensed physician practicing at VRC.

15.     The defendant was an approved Medicare service provider. A substantial portion of his client base was composed of elderly patients who were Medicare beneficiaries.

## Age-Related Macular Degeneration

16.     Age-related macular degeneration ("ARMD" or "AMD") is one of the leading causes of severe vision loss in people age sixty-five and older. In ARMD, there is a degeneration of the central area of the retina called the macula, which is responsible for the sharp, central vision needed for tasks such as reading, driving, and recognizing people's faces.

17.     The retina is a multilayered structure that lines the back of the eye and contains light-sensitive cells called photoreceptors. The macula contains the highest concentration of photoreceptors in the retina. Vision occurs when images carried via light rays enter the front of the eye and pass through the eye's lens, which focuses the light onto the retina. The photoreceptors then convert these images to electric impulses and send them via the optic nerve to the brain, which interprets the images as what we see.

18.     There are two forms of ARMD: (1) nonexudative, or "dry," and (2) exudative, or "wet." The large majority of people with ARMD suffer from the dry form. In patients with dry ARMD, the cells of the macula slowly break down, causing distorted and blurred vision. The technical name for dry ARMD is "nonexudative senile macular degeneration of retina."

19.     A smaller percentage of people with ARMD suffer from wet macular degeneration. In wet macular degeneration, abnormal blood vessels grow beneath the macula. These abnormal blood vessels leak blood and fluid into the macula, causing scarring and the

rapid loss of vision. Without treatment, wet ARMD leads to permanent vision loss. The technical name for wet ARMD is "exudative senile macular degeneration of retina."

20.     Conditions associated with wet ARMD may include bleeding within or beneath the retina, known as a retinal hemorrhage (sometimes abbreviated as "Ret Hem,") and detachments of a layer of pigmented cells called the retinal pigment epithelium, which lies beneath the sensory layer of the retina. A detachment caused by the accumulation of blood or fluid beneath this layer is referred to as a serous detachment of the retinal pigment epithelium (sometimes referred to as a pigment epithelial detachment or "PED"). Retinal hemorrhages and PEDs may also exist independently of ARMD.

### Diagnostic Testing

21.     Optical coherence tomography ("OCT") is a vital tool in diagnosing and managing ARMD. Developed in the 1990s, OCT provides high-resolution, cross-sectional imaging of the eye that is not possible with any other imaging technology. It is non-invasive and analogous to ultrasound imaging, except that it uses light instead of sound. The OCT captures detailed images of the retina on a microscopic level and can definitively establish the presence or absence of retinal and subretinal fluid. OCT imaging of the retina has been the standard of care for evaluating and following patients with ARMD for many years.

22.     Fundus photography is routinely utilized by ophthalmologists for diagnosis and documentation of a variety of retinal diseases and conditions. The interior of the eye, known as the fundus, may be photographed with a specialized camera that is attached to a low-power microscope. A fundus photograph captures the same view of the retina as would be seen by a doctor upon visual examination of the eye through a magnification device called an

ophthalmoscope. Fundus photographs may be taken in color or without color. The photographs that are not in color are referred to as "red free" photographs.

23.     Fluorescein angiography is another diagnostic tool available to ophthalmologists. Typically, a fluorescein angiogram (commonly referred to as an "FA") begins with the intravenous injection of fluorescein dye into the patient's arm, following which pictures are taken of the retina through a special filter on the fundus camera. As the fluorescein dye passes through the blood vessels in the eye, any leakage, including newly growing blood vessels, will light up, or hyperfluoresce. Blood may show as a darkened, or hypofluorescent, area. This is captured in a timed sequence of photos.

24.     Indocyanine green angiography is an ophthalmologic test involving photography of the subretinal layer of the eye, called the choroid. The taking of an indocyanine green angiogram (commonly referred to as an "ICG") requires the intravenous injection of a green, iodine-based dye. As the ICG dye passes through the choroidal blood vessels, abnormalities such as leakage in the vessels will be captured in a timed sequence of photos taken through a red-colored lens.

25.     Ultrasonography is a diagnostic imaging procedure that uses sound waves to capture images of the inside and back of the eye. In ophthalmology, there are two types used: the "A-scan" and the "B-scan" (when performed together, an "A/B scan"). Generally, an A-scan is used to measure the length of the eye, but may also be used to measure the height and reflectivity of tumors in the back of the eye. The B-scan can be used to assess the internal structure of the eye when the physician's view into the eye is otherwise obscured.

## Treatments

26.     With respect to dry ARMD, no effective treatment exists at present, although patients may be advised to take a regimen of certain vitamins that slow the progression of the disease.

27.     With respect to wet ARMD, which is characterized by the growth and leakage of abnormal blood vessels beneath the macula, there are treatments available to slow, stop, and in some cases, temporarily reverse the progression of the disease, in particular:

**A.      Anti-VEGF Drugs**:

28.     Lucentis is the brand name for the drug ranibizumab, which is manufactured by the pharmaceutical company Genentech. When injected directly into the vitreous of the eye (referred to as an "intravitreal injection"), Lucentis suppresses vascular endothelial growth factor ("VEGF"), a group of proteins that stimulate abnormal blood vessel growth. Lucentis has been found to be highly effective in stopping leakage from blood vessels as well as slowing the development of new vessels, leading to a stabilization of, and often an improvement in, vision. Lucentis has been on the market for the treatment of wet ARMD since its approval by the Food and Drug Administration ("FDA") in 2006.

29.     Avastin (drug name bevacizumab) is another anti-VEGF drug utilized by retinal experts in the treatment of wet ARMD. Avastin was initially approved by the FDA for the treatment of colon cancer but, in 2005, was found to be effective for wet ARMD when injected directly into the vitreous of the eye. Studies comparing the use of Avastin and Lucentis in treating wet ARMD have found no significant difference in outcome with respect to vision.

30.     In the past several years, other anti-VEGF drugs have come on the market. As a result of the high success rate associated with Lucentis, Avastin, and other more recent

9

intravitreal drugs, anti-VEGF drugs have become the standard of care in the treatment of wet ARMD.

**B.      Focal Laser Photocoagulation**

31.      Developed in the 1970s, focal laser photocoagulation ("focal laser") consists of shining a high-intensity laser light beam into the eye under magnification in order to burn, or cauterize, actively leaking blood vessels. Focal laser was the only effective treatment for wet ARMD for many years, but its use was generally limited to a small percentage of patients who had very well-defined areas of active leakage. Although focal laser treatment remains an approved medical procedure under Medicare rules, its use for the treatment of wet ARMD has substantially diminished in light of the proven success of anti-VEGF drugs.

## Reimbursement and Administration of Lucentis for Wet ARMD

32.      Medicare allows reimbursement to a provider for the administration of Lucentis for the treatment of wet ARMD. For the service to be payable under the First Coast LCD for Lucentis, however, the diagnosis of wet ARMD must be "firmly established" by OCT or FA.

33.      Each dose of Lucentis comes in a sealed and sterile glass vial designed to provide a single dose containing .5 mg/.05 milliliter of solution. As approved by the FDA, and as required in the First Coast LCD for Lucentis, each vial is to be used for the treatment of a single eye only. Any excess fluid or overfill is to be discarded.

34.      Practitioners who administer Lucentis to patients generally purchase the drug directly from the manufacturer Genentech or an authorized distributor. The practitioner then seeks reimbursement for the cost of the drug from the patient or from his health care benefit plan, such as Medicare. The Medicare reimbursement schedule for Lucentis is set annually based upon

the average sales price of the drug (the presumed cost to the practitioner), plus a 6% markup to reimburse the practitioner for the ordering and handling of the drug.

### Reimbursement for FAs and ICGs

35.     According to LCDs issued by First Coast, Medicare will reimburse a provider for FAs and ICGs only if they are related to the diagnosis and treatment of certain ophthalmologic conditions. For FAs, payment may be approved for wet and dry ARMD, among other conditions. For ICGs, payment may be approved for serous detachment of the retinal pigment epithelium and retinal hemorrhage, among other conditions, but not for wet or dry ARMD. In other words, a diagnosis of wet or dry ARMD, standing alone, might justify the billing and payment for an FA, but not an ICG.

### COUNTS 1-46
### Health Care Fraud
### (18 U.S.C. § 1347)

36.     Paragraphs 1 through 35 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

37.     Beginning at least as early as 2004, the exact date being unknown, and continuing at least to and through December 31, 2013, in Palm Beach and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

### SALOMON E. MELGEN,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare and other health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent

11

pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare and other health care benefit programs.

## Purpose and Object of the Scheme and Artifice

38.     It was the purpose and object of the scheme and artifice to defraud for the defendant, **SALOMON E. MELGEN**, to unlawfully enrich himself and others by, among other things, falsely diagnosing patients with ARMD and other medical conditions; submitting claims to Medicare and other health care benefit programs based upon false diagnoses and false entries in patient medical charts; submitting claims to Medicare for performing medically unreasonable and unnecessary diagnostic tests and procedures; and diverting proceeds of the fraud for the personal use and benefit of the defendant and others.

## The Scheme and Artifice

The manner and means by which the defendant sought to accomplish the purpose and object of the scheme and artifice to defraud included, among other things, the following:

39.     The defendant would operate a high-volume medical practice in which he would often see several hundred patients a week and as many as 100 patients or more in a single day. A large percentage of his patients were Medicare beneficiaries.

40.     The defendant would obtain patients through referrals and advertising. In his advertisements and on his website, the defendant would falsely claim to provide "state of the art vitreo-retinal care" using "the latest medical, surgical, and laser technologies available."

41.     The defendant would diagnose the vast majority of his Medicare patients with ARMD, either prior to or upon the initial patient visit, or in a subsequent visit. In fact, the defendant would have his staff pre-fill the diagnosis of ARMD into virtually every patient chart, even before the patient had been seen by the doctor the very first time. In truth and in fact, many

of these patients did not have ARMD in any form. In other instances, patients with dry ARMD in one or both eyes would be diagnosed with wet ARMD.

42.     The defendant would falsely diagnose patients with other retinal disorders, including serous detachment of the retinal pigment epithelium and retinal hemorrhages.

43.     The defendant would further cause patients to return to his clinic on a regular basis for medically unreasonable and unnecessary diagnostic tests, including FAs, ICGs, and A/B scans, often based upon false diagnoses.

44.     The defendant would further cause the submission of false claims for diagnostic tests and procedures based upon false diagnoses, including wet and dry ARMD, serous detachment of the retinal pigment epithelium, and retinal hemorrhages, on eyes that (1) did not display any macular pathology at all; (2) did not display the diagnosed condition; (3) were totally blind with no light perception, referred to as "NLP"; (4) were non-functional, shrunken, and atrophied, referred to medically as "phthisical"; or (5) were prosthetic.

45.     The defendant would further cause the submission of false claims for FAs and ICGs that were incompletely or improperly performed and were of little or no diagnostic value. This included, but was not limited to, instances where the ICG dye was administered to the patient orally, rather than via intravenous injection.

46.     The defendant would further fail to obtain or utilize OCT diagnostic imaging, even though the use of an OCT could have, in many instances, definitively established or refuted the defendant's diagnoses of ARMD and/or the presence of retinal and subretinal fluid, leakage, and PEDs.

47.     The defendant would further cause the submission of false claims for medically unreasonable and unnecessary medical treatments on patients, including administering Lucentis

injections and focal laser photocoagulation treatments on patients who could not and would not benefit from said treatments, such as those who had no macular pathology or had untreatable dry or end-stage ARMD.

48.     The defendant would further cause the submission of false claims for the purchase of Lucentis that substantially exceeded his actual cost, in that the defendant would cause "single-use" vials of Lucentis to be split into as many as four doses. These split vials would then be administered to multiple patients, in contravention of the First Coast LCD on Lucentis, and separately billed to Medicare and other health care providers at the full reimbursement rate for each, resulting in exorbitant and improper profits.

49.     The defendant would further cause patient files to contain false information, including false diagnoses and fictitious drawings and diagrams. In fact, drawings that purportedly represented the present condition of a patient's macula were routinely pre-filled by staff at VRC before the patient's visit. These drawings frequently did not correspond to the actual condition of the patient's macula, as indicated by FAs taken of the patient on that date.

50.     The defendant would further prepare false and fictious interpretations and reports in response to Medicare audit inquiries concerning his aberrant billing practices.

51.     Between January 2008 and December 2013, the defendant caused VRC to bill the Medicare program more than $190 million, for which VRC was paid more than $105 million. A substantial portion of these funds was obtained through fraudulent billing, as delineated above.

## Patients

52.     The following constitutes a sampling of patients for whom the defendant, **SALOMON E. MELGEN**, submitted false and fraudulent billing to Medicare during the time period relevant to this Indictment:

14

A.      Joseph A., born in 1934, was a patient of the defendant from August 2009 to October 2011. His visual acuity in his right eye was reported as NLP. Between August 2009 and October 2011, the defendant caused VRC to submit claims to Medicare totalling approximately $23,000 for examinations, tests, and procedures allegedly performed on both eyes of Joseph A., primarily under the diagnostic codes for dry AMD (362.51) and serous detachment of the retinal pigment epithelium (362.42). This included approximately $6,175 billed for FAs and ICGs on the NLP right eye.

B.      Anna B., born in 1931, was a patient of the defendant from November 1999 through at least December 2013. Between February 2008 and December 2013, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to Medicare totalling approximately $406,000 for examinations, tests, and procedures allegedly performed on both eyes of Anna B., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included approximately $177,000 billed for approximately 79 Lucentis injections and $29,000 billed for approximately 26 focal laser treatments. Medicare was also billed for approximately 105 FAs and 105 ICGs.

C.      Samuel B., born in 1929, was a patient of the defendant from February 2011 through at least December 2013. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $385,000 for examinations, tests, and procedures allegedly performed on both eyes of Samuel B., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included approximately $151,800 billed for approximately 70 Lucentis injections and $28,000 billed for 24 focal laser treatments. Medicare was also billed for approximately 86 FAs and 86 ICGs over this time period, including 30 of each in 2013 alone.

D.      Agnes B., born in 1923, was a patient of the defendant from July 2008 to September 2011. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $374,000 for examinations, tests, and procedures allegedly performed on both eyes of Agnes B., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included approximately $184,000 billed for approximately 80 Lucentis injections and $28,400 billed for approximately 26 focal laser treatments. Medicare was also billed for approximately 90 FAs and 90 ICGs.

E.      Lillie B., born in 1929, was a patient of the defendant from November 2010 to January 2011. Her visual acuity in her left eye was reported as NLP. Between November 2010 and January 2011, the defendant caused VRC to submit claims to Medicare totalling approximately $20,000 for examinations, tests, and procedures allegedly performed on both eyes of Lillie B., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included approximately $4,500 billed for tests and examinations allegedly performed on the NLP left eye.

F.      John B., born in 1950, was a patient of the defendant from July 2007 to November 2013. At the time of his initial visit, he reportedly had very poor eyesight (light perception and hand motion only). As of August 2009, his visual acuity in both eyes was reported as NLP. Between February 2008 and November 2013, the dates for which Medicare billing information is available, the defendant caused VRC to bill Medicare $79,000 for examinations, tests, and procedures allegedly performed on both eyes of John B., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for 13 FAs and 13 ICGs—as well 5 Lucentis injections in the NLP left eye— after August 2009.

G.    Maggie B., born in 1946, was a patient of the defendant from September 2005 through at least December 2013. Between July 2008 through December 2013, the dates for which Medicare billing information is available, the defendant caused VRC to bill Medicare approximately $411,000 for examinations, tests, and procedures allegedly performed on both eyes of Maggie B., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 64 Lucentis injections, 37 focal laser treatments, 136 FAs, and 135 ICGs, many of which were performed with the dye being administered orally.

H.    Belle B., born in 1928, was a patient of the defendant from July 1993 through at least December 2013. Between January 2008 and December 2013, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to Medicare totalling approximately $147,000 for examinations, tests, and procedures allegedly performed on both eyes of Belle B., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare approximately $45,200 for approximately 40 focal laser treatments (20 to each eye).

I.    Cassandra D., born in 1965, was a patient of the defendant from February 2009 through at least December 2013. During this time period, the defendant caused VRC to bill Medicare approximately $499,000 for examinations, tests, and procedures allegedly performed on both eyes of Cassandra D., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 80 Lucentis injections, 29 focal laser treatments, 117 FAs, and 117 ICGs.

J.    Patient Beverly F., born in 1929, was a patient of the defendant from March 2003 through at least December 2013. She had a prosthetic left eye. From January 2008

through December 2013, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to Medicare totalling approximately $46,000 for examinations, tests, and procedures allegedly performed on both eyes of Beverly F., primarily under the diagnostic codes for dry ARMD (362.51), wet ARMD (362.52), and serous detachment of the retinal pigment epithelium (362.42). This included approximately $12,350 billed for FAs and ICGs on the prosthetic left eye.

K.      Kermit F., born in 1960, was a patient of the defendant from June 2010 to August 2012. Kermit F. had a prosthetic right eye. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $144,000 for examinations, tests, and procedures allegedly performed on both eyes of Kermit F., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 44 FAs, 44 ICGs, and 8 diagnostic ultrasounds on the prosthetic right eye.

L.      Rovena F., born in 1947, was a patient of the defendant from July 2001 to November 2011. She had a blind and shrunken (phthisical) left eye. Between January 2008 and December 2011, the defendant caused VRC to submit claims to Medicare totalling approximately $243,000 for examinations, tests, and procedures allegedly performed on both eyes of Rovena F., primarily under the diagnosis codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included approximately $47,000 billed for approximately 73 FAs, 66 ICGs, and 17 diagnostic ultrasounds on the phthisical left eye.

M.      Delores G., born in 1937, was a patient of the defendant from June 2007 through at least December 2013. Between January 2008 and December 2013, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to Medicare totalling approximately $541,000 for examinations, tests, and procedures allegedly

performed on both eyes of Delores G., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included approximately $310,000 billed for approximately 130 Lucentis injections and $22,600 billed for 20 focal laser treatments. Medicare was also billed for approximately 121 FAs and 121 ICGs during this time period.

N.      Robert H., born in 1926, was a patient of the defendant from September 2010 until his death in April 2011. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $55,000 for examinations, tests, and procedures allegedly performed on both eyes of Robert H., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 15 FAs and 14 ICGs, many of which were performed with the dye being administered orally.

O.      Margie J., born in 1946, was a patient of the defendant from March 1995 through at least December 2013. Between January 2008 and February 2012, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to Medicare totalling approximately $539,000 for examinations, tests, and procedures allegedly performed on both eyes of Margie J., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 103 Lucentis injections and 31 focal laser treatments, as well as 133 FAs and 133 ICGs, many of which were performed with the dye being administered orally. Of this, the FAs and ICGs alone were billed at approximately $131,000.

P.      Norman K., born in 1925, was a patient of the defendant from February 2010 through at least December 2013. Between February 2011 and December 2013, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to

Medicare totalling approximately $210,000 for examinations, tests, and procedures allegedly performed on both eyes of Norman K., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81).

      Q.     Cecelia K., born in 1944, was a patient of the defendant from August 2009 to October 2011. Between January 2011 and October 2011, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to Medicare totalling approximately $58,000 for examinations, tests, and procedures allegedly performed on both eyes of Cecelia K. under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 11 Lucentis injections and 4 focal laser treatments, as well as for 15 FAs and 15 ICGs.

      R.     Saundra L., born in 1952, was a patient of the defendant from April 2009 through at least December 2013. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $505,000 for examinations, tests, and procedures allegedly performed on both eyes of Saundra L., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 99 Lucentis injections and 34 focal laser treatments, as well as for approximately 124 FAs and 124 ICGs, many of which were performed with the dye being administered orally.

      S.     West L., born in 1928, was a patient of the defendant from the early 1990s to November 2013. Between January 2008 and November 2013, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to Medicare totalling approximately $615,000 for examinations, tests, and procedures allegedly performed on both eyes of West L., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for 133 Lucentis injections and 44 focal

laser treatments on West L., as well as for approximately 142 FAs and 142 ICGs, many of which were performed with the dye being administered orally.

  T. Lynda N., born in 1960, was a patient of the defendant from January 2012 through at least December 2013. Lynda N. had a prosthetic left eye. Between January 2012 and December 2013, the defendant caused VRC to submit claims to Medicare totalling approximately $117,600 for examinations, tests, and procedures allegedly performed on both eyes of Lynda N., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). Of this, approximately $18,525 was billed for alleged examinations and testing on the prosthetic left eye, including approximately 38 FAs and 38 ICGs.

  U. Milton N., born in 1922, was a patient of the defendant from March 2011 to June 2013. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $150,300 for examinations, tests, and procedures allegedly performed on both eyes of Milton N., primarily under the diagnostic codes for wet ARMD (362.52) and serous detachment of the retinal pigment epithelium (362.42).

  V. Jose O., born in 1939, was a patient of the defendant from February 2011 to November 2012. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $104,000 for examinations, tests, and procedures allegedly performed on both eyes of Jose O, primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 30 FAs and 30 ICGs.

  W. Efrain O., born in 1960, was a patient of the defendant from April 2009 through at least December 2013. As of February 2012, his visual acuity in his left eye was reported as NLP. Between May 2009 and December 2013, the dates for which Medicare billing

information is available, the defendant caused VRC to submit claims to Medicare totaling approximately $349,000 for examinations, tests, and procedures allegedly performed on both eyes of Efrain O., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 32 FAs and 32 ICGs on the NLP left eye after February 2012.

        X.     Mildred P., born in 1930, was a patient of the defendant from August 2011 to January 2013. During this time period, the defendant caused VRC to submit claims to Medicare totaling approximately $155,000 for examinations, tests, and procedures allegedly performed on both eyes of Mildred P., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 37 FAs and 37 ICGs, many of which were performed with the dye being administered orally.

        Y.     Frances P., born in 1925, was a patient of the defendant from July 2001 through at least November 2013. Between January 2008 and November 2013, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to Medicare totalling approximately $409,000 for examinations, tests, and procedures allegedly performed on both eyes of Frances P., primarily under the diagnostic codes for wet ARMD (362.52) and serous detachment of the retinal pigment epithelium (362.42). This included billing Medicare for approximately 90 Lucentis injections, 28 focal laser treatments, 106 FAs, and 106 ICGs.

        Z.     Herbert P., born in 1935, was a patient of the defendant from August 1998 through at least December 2013. Between January 2008 and December 2013, the dates for which Medicare billing information is available, the defendant caused VRC to submit claims to Medicare totalling approximately $593,000 for examinations, tests, and procedures allegedly

performed on both eyes of Herbert P., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 140 Lucentis injections, 47 focal laser treatments, 139 FAs, and 139 ICGs, many of which were performed with the dye being administered orally.

AA.    Katie R., born in 1953, was a patient of the defendant from July 2008 to July 2011. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $325,000 for examinations, tests, and procedures allegedly performed on both eyes of Katie R., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 59 Lucentis injections, 18 focal laser treatments, 86 FAs, and 86 ICGs, many of which were performed with the dye being administered orally.

BB.    Matilde R., born in 1913, was a patient of the defendant from September 2010 to August 2011. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $94,000 for examinations, tests, and procedures allegedly performed on both eyes of Matilde R., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81).

CC.    Carlos R., born in 1937, was a patient of the defendant from August 2010 to January 2012. During this time period, the defendant caused VRC to submit claims to Medicare totalling approximately $63,400 for examinations, tests, and procedures allegedly performed on both eyes of Carlos R., primarily under the diagnostic codes for wet ARMD (362.52) and serous detachment of the retinal pigment epithelium (362.42).

DD.    Julia S., born in 1917, was a patient of the defendant from May 2008 to May 2012. As of August 2011, her visual acuity in her left eye was reported as NLP. Between

May 2008 and May 2012, the defendant caused VRC to submit claims to Medicare totaling approximately $447,000 for examinations, tests, and procedures allegedly performed on both eyes of Julia S., primarily under the diagnostic codes for wet ARMD (362.52) and retinal hemorrhage (362.81). This included billing Medicare for approximately 10 Lucentis injections, 22 FAs, and 23 ICGs to the NLP left eye after August 2011.

### Execution of the Scheme and Artifice

53.    In execution of the scheme and artifice to defraud, in Palm Beach and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**SALOMON E. MELGEN,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant did submit and cause the submission of billing to Medicare for the below-listed patients, among others, as further described below.

| COUNT | PATIENT | DATE OF SERVICE | DIAG. CODES | PROCEDURE CODES AND DESCRIPTIONS | | TOTAL BILLED |
|---|---|---|---|---|---|---|
| 1 | Anna B. | 12/8/11 | 362.52 362.81 | 67220-LT 92226-50 92235-50 92240-RT 92240-LT | Destruction of lesion of choroid [focal laser] Ext. ophthalmoscopy with drawing, I&R Fluorescein angiography, I&R Indocyanine green angiography, I&R Indocyanine green angiography, I&R | $2,210 |

| COUNT | PATIENT | DATE OF SERVICE | DIAG. CODES | PROCEDURE CODES AND DESCRIPTIONS | | TOTAL BILLED |
|---|---|---|---|---|---|---|
| 2 | Anna B. | 1/24/13 | 362.52 362.81 | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | $6,410 |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | J2778-RT | Ranibizumab injection | |
| | | | | J2778-LT | Ranibizumab injection | |
| | | | | 65800-RT | Paracentesis of eye with aqueous aspiration | |
| | | | | 65800-LT | Paracentesis of eye with aqueous aspiration | |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | 67028-RT | Intravitreal injection of pharmacologic agent | |
| 3 | Samuel B. | 2/7/11 | 362.52 379.25 362.81 | 67028-RT | Intravitreal injection of pharmacologic agent | $6,874 |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| | | | | 76510-LT | Ultrasound, B and quantitative A scan | |
| | | | | 92004-25 | Comprehensive exam, new patient | |
| | | | | 92225-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | J2778-RT | Ranibizumab injection | |
| | | | | J2778-LT | Ranibizumab injection | |
| 4 | Samuel B. | 10/1/13 | 362.52 362.81 | 65800-RT | Paracentesis of eye with aqueous aspiration | $2,210 |
| | | | | 67028-RT | Intravitreal injection of pharmacologic agent | |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | J3490-RT | Drugs unclassified injection | |
| | | | | J3490-LT | Drugs unclassified injection | |
| 5 | Agnes B. | 3/3/11 | 362.52 379.25 | 67220-RT | Destruction of lesion of choroid [focal laser] | $2,610 |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 76510-LT | Ultrasound, B and quantitative A scan | |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| 6 | Agnes B. | 3/24/11 | 362.52 362.81 | 67220-LT | Destruction of lesion of choroid [focal laser} | $2,210 |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| 7 | Lillie B. | 11/11/10 | 362.52 379.23 362.81 | 67028-RT | Intravitreal injection of pharmacologic agent | $4,450 |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| | | | | 76510-LT | Ultrasound, B and quantitative A scan | |
| | | | | 92004-25 | Comprehensive exam, new patient | |
| | | | | 92225-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | J2778-RT | Ranibizumab injection | |

| COUNT | PATIENT | DATE OF SERVICE | DIAG. CODES | PROCEDURE CODES AND DESCRIPTIONS | | TOTAL BILLED |
|---|---|---|---|---|---|---|
| 8 | Lillie B. | 11/18/10 | 362.52 362.81 | 67220-RT<br>92014-57<br>92226-50<br>92235-50<br>92240-RT<br>92240-LT | Destruction of lesion of choroid [focal laser]<br>Comprehensive exam, established patient<br>Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | $2,335 |
| 9 | John B. | 1/22/13 | 362.52 365.22 379.23 362.81 | 66761-LT<br>76510-RT<br>76510-LT<br>92014-57<br>92226-50<br>92235-50<br>92240-RT<br>92240-LT | Iridotomy/iridectomy by laser surgery<br>Ultrasound, B and quantitative A scan<br>Ultrasound, B and quantitative A scan<br>Comprehensive exam, established patient<br>Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | $1,950 |
| 10 | John B. | 1/29/13 | 362.52 362.81 | 65800-LT<br>67028-LT<br>92226-50<br>92235-50<br>92240-RT<br>92240-LT<br>J2778-LT | Paracentesis of eye with aqueous aspiration<br>Intravitreal injection of pharmacologic agent<br>Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R<br>Ranibizumab injection | $3,710 |
| 11 | Belle B. | 7/13/12 | 362.52 379.25 362.81 | 67220-LT<br>76510-RT<br>76510-LT<br>92226-50<br>92235-50<br>92240-RT<br>92240-LT | Destruction of lesion of choroid [focal laser]<br>Ultrasound, B and quantitative A scan<br>Ultrasound, B and quantitative A scan<br>Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | $2,610 |
| 12 | Belle B. | 1/25/13 | 362.52 362.81 | 67220-LT<br>92226-50<br>92235-50<br>92240-RT<br>92240-LT | Destruction of lesion of choroid [focal laser]<br>Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | $2,210 |
| 13 | Cassandra D. | 4/13/11 | 362.52 379.23 362.81 | 67220-LT<br>76510-RT<br>76510-LT<br>92014-57<br>92226-50<br>92235-50<br>92240-RT<br>92240-LT | Destruction of lesion of choroid [focal laser]<br>Ultrasound, B and quantitative A scan<br>Ultrasound, B and quantitative A scan<br>Comprehensive exam, established patient<br>Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | $2,735 |
| 14 | Cassandra D. | 4/16/12 | 362.52 362.81 | 67220-LT<br>92226-50<br>92235-50<br>92240-RT<br>92240-LT | Destruction of lesion of choroid [focal laser]<br>Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | $2,210 |

| COUNT | PATIENT | DATE OF SERVICE | DIAG. CODES | PROCEDURE CODES AND DESCRIPTIONS | | TOTAL BILLED |
|---|---|---|---|---|---|---|
| 15 | Beverly F. | 8/1/12 | 362.52 379.23 362.42 | 92226-50<br>92235-50<br>76510-RT<br>92240-RT<br>76510-LT<br>67220-RT<br>92240-LT | Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein Angiography, I&R<br>Ultrasound, B and quantitative A scan<br>Indocyanine green angiography, I&R<br>Ultrasound, B and quantitative A scan<br>Destruction of lesion of choroid [focal laser]<br>Indocyanine green angiography, I&R | $2,610 |
| 16 | Beverly F. | 12/28/12 | 362.52 379.23 362.42 | 76510-LT<br>92240-LT<br>92226-50<br>92235-50<br>92240-RT<br>92014<br>76510-RT | Ultrasound, B and quantitative A scan<br>Indocyanine green angiography, I&R<br>Ext. ophthalmoscopy with drawing, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R<br>Comprehensive exam, established patient<br>Ultrasound, B and quantitative A scan | $1,540 |
| 17 | Rovena F. | 2/3/11 | 362.52 362.81 | 67220-RT<br>92226-50<br>92235-50<br>92240-RT<br>92240-LT | Destruction of lesion of choroid [focal laser]<br>Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | $2,210 |
| 18 | Rovena F. | 3/17/11 | 362.52 379.23 362.81 | J2778-RT<br>76510-RT<br>76510-LT<br>67028-RT<br>92226-50<br>92235-50<br>92240-RT<br>92240-LT | Ranibizumab injection<br>Ultrasound, B and quantitative A scan<br>Ultrasound, B and quantitative A scan<br>Intravitreal injection of pharmacologic agent<br>Ext. ophthalmoscopy with drawing, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | $4,310 |
| 19 | Delores G. | 6/21/12 | 362.52 379.23 362.81 | 92240-RT<br>92226-50<br>92240-LT<br>92235-50<br>92014-57<br>76510-LT<br>76510-RT<br>67220-LT | Indocyanine green angiography, I&R<br>Ext. ophthalmoscopy with drawing, I&R<br>Indocyanine green angiography, I&R<br>Fluorescein angiography, I&R<br>Comprehensive exam, established patient<br>Ultrasound, B and quantitative A scan<br>Ultrasound, B and quantitative A scan<br>Destruction of lesion of choroid [focal laser] | $2,740 |
| 20 | Delores G. | 8/16/12 | 362.52 362.81 | 92240-LT<br>J2778-RT<br>92240-RT<br>92235-50<br>92226-50<br>67028-LT<br>67028-RT<br>J2778-RT | Indocyanine green angiography, I&R<br>Ranibizumab injection<br>Indocyanine green angiography, I&R<br>Fluorescein Angiography, I&R<br>Ext. ophthalmoscopy with drawing, I&R<br>Intravitreal injection of pharmacologic agent<br>Intravitreal injection of pharmacologic agent<br>Ranibizumab injection | $6,010 |
| 21 | Margie J. | 3/24/11 | 362.52 362.81 | 92240-RT<br>92235-50<br>92240-LT<br>92226-50<br>67220-RT | Indocyanine green angiography, I&R<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Ext. ophthalmoscopy with drawing, I&R<br>Destruction of lesion of choroid [focal laser] | $2,210 |

| COUNT | PATIENT | DATE OF SERVICE | DIAG. CODES | PROCEDURE CODES AND DESCRIPTIONS | | TOTAL BILLED |
|---|---|---|---|---|---|---|
| 22 | Margie J. | 1/12/12 | 362.52 379.23 362.81 | 76510-LT | Ultrasound, B and quantitative A scan | $2,610 |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 67220-LT | Destruction of lesion of choroid [focal laser] | |
| 23 | Norman K. | 2/16/11 | 362.52 362.81 | 92014-57 | Comprehensive exam, established patient | $2,335 |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 67220-LT | Destruction of lesion of choroid [focal laser] | |
| 24 | Norman K. | 2/25/11 | 362.52 362.81 | 92014-57 | Comprehensive exam, established patient | $2,335 |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 67220-RT | Destruction of lesion of choroid [focal laser] | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| 25 | Cecelia K. | 1/13/11 | 362.52 362.81 | 92235-50 | Fluorescein angiography, I&R | $2,335 |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92014-57 | Comprehensive exam, established patient | |
| | | | | 67220-RT | Destruction of lesion of choroid [focal laser] | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| 26 | Cecelia K. | 10/27/11 | 362.52 362.81 | J2778-RT | Ranibizumab injection | $3,910 |
| | | | | 67028-RT | Intravitreal injection of pharmacologic agent | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| 27 | Saundra L. | 5/16/12 | 362.52 362.81 | 92240-RT | Indocyanine green angiography, I&R | $2,210 |
| | | | | 67220-LT | Destruction of lesion of choroid [focal laser] | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| 28 | Saundra L. | 1/23/13 | 362.52 379.23 362.81 | 92235-50 | Fluorescein angiography, I&R | $2,610 |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 76510-LT | Ultrasound, B and quantitative A scan | |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| | | | | 67220-RT | Destruction of lesion of choroid [focal laser] | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |

| COUNT | PATIENT | DATE OF SERVICE | DIAG. CODES | PROCEDURE CODES AND DESCRIPTIONS | | TOTAL BILLED |
|---|---|---|---|---|---|---|
| 29 | Milton N. | 3/11/11 | 362.52 379.25 362.42 | 92240-RT | Indocyanine green angiography, I&R | $6,874 |
| | | | | J2778-LT | Ranibizumab injection | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92225-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92004-25 | Comprehensive exam, new patient | |
| | | | | 76510-LT | Ultrasound, B and quantitative A scan | |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | J2778-RT | Ranibizumab injection | |
| | | | | 67028-RT | Intravitreal injection of pharmacologic agent | |
| 30 | Milton N. | 3/16/11 | 362.52 362.42 | 92014-57 | Comprehensive exam, established patient | $2,335 |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 67220-RT | Destruction of lesion of choroid [focal laser] | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| 31 | Jose O. | 2/24/11 | 362.52 362.81 | 92014-57 | Comprehensive exam, established patient | $2,335 |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 67220-LT | Destruction of lesion of choroid [focal laser] | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| 32 | Jose O. | 12/15/11 | 362.52 379.25 362.81 | 76510-RT | Ultrasound, B and quantitative A scan | $2,735 |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92014 | Comprehensive exam, established patient | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 76510-LT | Ultrasound, B and quantitative A scan | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 67220-LT | Destruction of lesion of choroid [focal laser] | |
| 33 | Efrain O. | 11/8/11 | 362.52 362.81 | J2778-LT | Ranibizumab injection | $6,324 |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | J2778-RT | Ranibizumab injection | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | 67028-RT | Intravitreal injection of pharmacologic agent | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| 34 | Efrain O. | 3/20/12 | 362.52 362.81 | 92240-LT | Indocyanine green angiography, I&R | $2,210 |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 67220-RT | Destruction of lesion of choroid [focal laser] | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |

| COUNT | PATIENT | DATE OF SERVICE | DIAG. CODES | PROCEDURE CODES AND DESCRIPTIONS | | TOTAL BILLED |
|---|---|---|---|---|---|---|
| 35 | Mildred P. | 8/29/11 | 362.52 379.25 362.81 | 92235-50 | Fluorescein angiography, l&R | $6,874 |
| | | | | J2778-LT | Ranibizumab injection | |
| | | | | J2778-RT | Ranibizumab injection | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92225-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92004-25 | Comprehensive exam, new patient | |
| | | | | 76510-LT | Ultrasound, B and quantitative A scan | |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | 67028-RT | Intravitreal injection of pharmacologic agent | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| 36 | Mildred P. | 10/24/11 | 362.52 362.81 | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | $6,324 |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 67028-RT | Intravitreal injection of pharmacologic agent | |
| | | | | J2778-LT | Ranibizumab injection | |
| | | | | J2778-RT | Ranibizumab injection | |
| 37 | Frances P. | 9/23/10 | 362.52 362.42 | 67028-LT | Intravitreal injection of pharmacologic agent | $3,910 |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | J2778-LT | Ranibizumab injection | |
| 38 | Frances P. | 11/4/10 | 362.52 362.42 | 67220-LT | Destruction of lesion of choroid [focal laser] | $2,210 |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| 39 | Herbert P. | 2/10/11 | 362.52 362.81 | 92240-LT | Indocyanine green angiography, I&R | $2,210 |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 67220-LT | Destruction of lesion of choroid [focal laser] | |
| 40 | Herbert P. | 1/17/13 | 362.52 379.23 362.81 | 67220-LT | Destruction of lesion of choroid [focal laser] | $2,610 |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 76510-LT | Ultrasound, B and quantitative A scan | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| 41 | Matilde R. | 6/30/11 | 362.52 362.81 | 67220-LT | Destruction of lesion of choroid [focal laser] | $2,210 |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |

| COUNT | PATIENT | DATE OF SERVICE | DIAG. CODES | PROCEDURE CODES AND DESCRIPTIONS | | TOTAL BILLED |
|---|---|---|---|---|---|---|
| 42 | Matilde R. | 8/18/11 | 362.52 362.81 | 67028-RT | Intravitreal injection of pharmacologic agent | $6,324 |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | J2778-RT | Ranibizumab injection | |
| | | | | J2778-LT | Ranibizumab injection | |
| 43 | Carlos R. | 1/26/11 | 362.52 379.25 362.42 | 76510-LT | Ultrasound, B and quantitative A scan | $4,310 |
| | | | | J2778-LT | Ranibizumab injection | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| 44 | Carlos R. | 1/25/12 | 362.52 362.42 | J2778-LT | Ranibizumab injection | $4,035 |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | 92014-25 | Comprehensive exam, established patient | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| 45 | Julia S. | 2/17/11 | 362.52 379.25 362.81 | 76510-LT | Ultrasound, B and quantitative A scan | $2,735 |
| | | | | 92014-57 | Comprehensive exam, established patient | |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 67220-RT | Destruction of lesion of choroid [focal laser] | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 76510-RT | Ultrasound, B and quantitative A scan | |
| | | | | 92240-LT | Indocyanine green angiography, I&R | |
| 46 | Julia S. | 5/24/12 | 362.52 362.81 | 92240-LT | Indocyanine green angiography, I&R | $3,510 |
| | | | | 92226-50 | Ext. ophthalmoscopy with drawing, I&R | |
| | | | | 92235-50 | Fluorescein angiography, I&R | |
| | | | | 92240-RT | Indocyanine green angiography, I&R | |
| | | | | 67028-LT | Intravitreal injection of pharmacologic agent | |
| | | | | J2778-LT | Ranibizumab injection | |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## <u>COUNTS 47-65</u>
### False, Fictitious, and Fraudulent Claims
### (18 U.S.C. §§ 287 and 2)

54.    Paragraphs 1 through 35 and 52 above are realleged and incorporated by reference as though fully set forth herein.

55.   On or about the dates set forth below as to each count, in Palm Beach and St. Lucie Counties, in the Southern District of Florida, the defendant,

**SALOMON E. MELGEN,**

did knowingly make, present, and file, and cause to be made, presented, and filed, with the Department of Health and Human Services, Centers for Medicare and Medicaid Services, an agency of the United States, through the agency's intermediary, First Coast Service Options, false, fictitious, and fraudulent claims against the United States, that is, Medicare reimbursement claims for benefits for certain ophthalmic diagnostic tests and procedures, in particular FAs, ICGs, and A/B scans, purportedly performed on Medicare beneficiaries. In truth and in fact, and as the defendant then and there well knew, the claimed ophthalmic procedures were medically unreasonable and unnecessary, in that the procedures were performed on patients who had prosthetic or blind (NLP) eyes, patients who did not receive an injection of ICG dye, or patients for whom the test results were otherwise non-existent or unreadable, as follows:

| COUNT | PATIENT | DATE OF SERVICE | BILLING CODES | CLAIMED PROCEDURE (abbrev.) | BASIS OF FALSE CLAIM |
|-------|---------|-----------------|---------------|------------------------------|----------------------|
| 47 | Joseph A. | 10/13/11 | 92235-50<br>92240-RT<br>76510-RT | Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Ultrasound, B and quantitative A scan | No test results right eye (NLP eye) |
| 48 | Lillie B. | 11/18/10 | 76510-LT<br>92235-50<br>92240-LT | Ultrasound, B and quantitative A scan<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R | No test results left eye (NLP eye) |
| 49 | John B. | 1/29/13 | 92235-50<br>92240-RT<br>92240-LT | Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (NLP and no dye) |
| 50 | Maggie B. | 9/12/12 | 92240-RT<br>92240-LT | Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (no dye) |
| 51 | Beverly F. | 12/28/12 | 76510-LT<br>92235-50<br>92240-LT | Ultrasound, B and quantitative A scan<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R | No test results left eye (prosthetic eye) |
| 52 | Kermit F. | 5/21/12 | 92235-50<br>92240-RT<br>76510-RT | Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Ultrasound, B and quantitative A scan | No test results (prosthetic right eye) |
| 53 | Rovena F. | 3/17/11 | 76510-LT<br>92235-50<br>92240-LT<br>92240-RT | Ultrasound, B and quantitative A scan<br>Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (NLP left eye and no dye) |

| COUNT | PATIENT | DATE OF SERVICE | BILLING CODES | CLAIMED PROCEDURE (abbrev.) | BASIS OF FALSE CLAIM |
|---|---|---|---|---|---|
| 54 | Robert H. | 3/31/11 | 92235-50<br>92240-RT<br>92240-LT | Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (no dye) |
| 55 | Margie J. | 1/12/12 | 92240-LT<br>92240-RT | Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (no dye) |
| 56 | Norman K. | 2/16/11 | 92240-LT<br>92240-RT | Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (unreadable) |
| 57 | Saundra L. | 1/16/13 | 92235-50<br>92240-RT<br>92240-LT | Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (no dye) |
| 58 | West L. | 3/1/12 | 92240-RT<br>92240-LT | Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (no dye) |
| 59 | Lynda N. | 12/5/13 | 92235-50<br>92240-LT | Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R | No test results (prosthetic left eye) |
| 60 | Milton N. | 3/16/11 | 92240-LT<br>92240-RT | Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (no dye) |
| 61 | Efrain O. | 12/17/13 | 92235-50<br>92240-LT | Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R | No test results (NLP left eye) |
| 62 | Mildred P. | 1/14/13 | 92240-RT<br>92240-LT | Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (no dye) |
| 63 | Herbert P. | 2/10/11 | 92235-50<br>92240-RT<br>92240-LT | Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (no dye) |
| 64 | Katie R. | 3/23/11 | 92240-RT<br>92240-LT | Indocyanine green angiography, I&R<br>Indocyanine green angiography, I&R | No test results (no dye) |
| 65 | Julia S. | 5/24/12 | 92235-50<br>92240-LT | Fluorescein angiography, I&R<br>Indocyanine green angiography, I&R | No test results (NLP left eye) |

All in violation of Title 18, United States Code, Sections 287 and 2.

<u>COUNTS 66-76</u>
**False Statements Relating to Health Care**
**(18 U.S.C. §§ 1035(a)(2) and 2)**

56.     Paragraphs 1 through 35 and 52 above are realleged and incorporated by reference as though fully set forth herein.

57.     On or about the dates set forth below as to each count, in Palm Beach and St. Lucie Counties, in the Southern District of Florida, the defendant,

**SALOMON E. MELGEN,**

in a matter involving a health care benefit program, to wit, Medicare, did knowingly and willfully make and use a materially false writing and document knowing the same to contain a

33

materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, in that the defendant would make and cause to be made false entries into the charts of Medicare patients, that is, follow-up evaluation forms containing false diagnoses and fictitious retinal drawings, as further set forth below:

| Count | Patient | Date of Service |
|-------|---------|-----------------|
| 66 | Anna B. | 1/24/13 |
| 67 | Samuel B. | 1/2/13 |
| 68 | Agnes B. | 3/3/11 |
| 69 | Belle B. | 1/25/13 |
| 70 | Cassandra D. | 4/16/12 |
| 71 | Beverly F. | 8/1/12 |
| 72 | Kermit F. | 8/10/11 |
| 73 | Delores G. | 5/17/12 |
| 74 | Cecelia K. | 1/13/11 |
| 75 | Milton N. | 3/16/11 |
| 76 | Efrain O. | 3/20/12 |

All in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. 982(a)(7))

Upon conviction of any of the violations alleged in Counts 1 through 76 of this Indictment, the defendant, **SALOMON E. MELGEN**, shall forfeit to the United States all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

## SUBSTITUTE ASSETS

If any of the forfeitable property described in the forfeiture section of this indictment, as a result of any act or omission of the defendant, **SALOMON E. MELGEN,**

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

34

    c.      has been placed beyond the jurisdiction of the Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853.

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
ROGER H. STEFIN
ASSISTANT UNITED STATES ATTORNEY

_____
CAROLYN BELL
ASSISTANT UNITED STATES ATTORNEY

_____
ALEXANDRA CHASE
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

**SALOMON E. MELGEN,**
     **Defendant.**
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

|  |  |  |  |
|---|---|---|---|
| Miami | ____ | Key West | ____ |
| FTL | ____ | WPB | X | FTP | ___ |

New Defendant(s)    YES _____  NO ____
Number of New Defendants
Total number of counts  _____

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter: (Yes or No)  No
   List language and/or dialect _____

4.   This case will take  30  days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

   (Check only one)             (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | X | Felony | X |
| V | 61 days and over | | | |

6.   Has this case been previously filed in this District Court? (Yes or No)  No
If yes:
Judge: _____     Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter? (Yes or No)  No
If yes: Magistrate Case No.
Related Miscellaneous numbers: 13-8050-JMH; 13-8051-JMH; 13-8052-JMH; 13-8450-DLB
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____
District of

Is this a potential death penalty case? (Yes or No) ____Yes  X No

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes  X No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  _____ Yes  X No

_____
ROGER H. STEFIN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar/Court No. 287334

*Penalty Sheet(s) attached              REV.9/11/07

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**:  <u>**SALOMON E. MELGEN**</u>

**Case No**: _____

Counts  #: 1-46

   Health Care Fraud

   Title 18 U.S.C. § 1347

**\* Max.Penalty**: 10 Years' Imprisonment;   3 Years' Supervised Release;
         $250,000 Fine

Counts  #: 47-65

   False, Fictitious, and Fraudulent Claims

   Title 18 U.S.C. § 287

**\* Max.Penalty**: 5 Years' Imprisonment;   3 Years' Supervised Release;
         $250,000 Fine

Counts  #: 66-76

   False Statements Relating to Health Care

   Title 18 U.S.C. § 1035(a)(2)

**\* Max.Penalty**: 5 Years' Imprisonment;   3 Years' Supervised Release;
         $250,000 Fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

1